**The Honorable Tana Lin**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **NO. 23-cr-00142-TL** |
| **Plaintiff,** | ) | |
| **v.** | ) | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND FOR *FRANKS* HEARING** |
| **KEITH RUSSELL,** | ) | |
| **Defendant.** | ) | **Noted on Motion Calendar: April 26, 2024** |

## I. REPLY

Throughout its Opposition to to Defendant's Motion to Suppress and Motion for *Franks* Hearing ("Opposition," Dkt. 45), the Government conveniently ignores salient facts and on-point caselaw. In light of all the relevant facts, the officers in this case unlawfully extended the duration of the traffic stop, performed unlawful searches, arrested Mr. Russell without probable cause, and made knowing or recklessly false statements in a warrant affidavit. All evidence must be suppressed.

### A. The Duration of the Stop Cannot be Justified by its Asserted Bases



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

### 1. The Extended Stop Cannot be Justified by the Supposed Blocking Traffic Infraction, Because the Officers Made No Attempt to Address It

The Government argues that the stop[1] of Mr. Russell was justified by probable cause to believe that he had committed two infractions: allegedly blocking traffic, and allegedly failing to display a license plate. As an initial matter, it should be noted that the officers claim to have seen Mr. Russell's car in same place on two occasions in time separated by approximately 10 minutes, describing him as "blocking traffic."[2] What they cannot say with any personal knowledge is whether Mr. Russell had moved his car in the interim and returned to the intersection to wait for a chance to turn onto Aurora Avenue North. It should also be noted that the cruiser dash camera video submitted by the Government makes it clear that Mr. Russell's car was not blocking any traffic.[3] Finally, the complaints referenced by the Government (Dkt. 45 at 2) were called in at some unspecified prior occasion, rather than concerning Mr. Russell on this occasion.[4] Given these facts, the defense position is that there was no probable cause to stop Mr. Russell for "blocking traffic." In any case, at no point in the subsequent interaction did either officer show the slightest interest in "investigating" or otherwise addressing the supposed blocking traffic infraction.

The scope of a traffic or investigatory stop "must be carefully tailored to its underlying justification" and "last no longer than is necessary to effectuate the purpose of the stop." *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492, (2015), citing

---

[1] In its Opposition, the Government asserts that the "officers activated the patrol vehicle's emergency lights and attempted toconduct a traffic stop of the Volvo as it pulled onto Aurora Avenue North" (Dkt. 45 at 3). In fact, the officers followed Mr. Russell for 12 blocks before activating their lights, observing no traffic infractions during that time. Dkt. 35 at 2-3 and citations therein.

[2] See Dkt. 36-1 at 2.

[3] See Docket 43-1 (Government's Opposition Exhibit A), at 00:00-00:10; Reply Declaration in Support of Motion to Suppress Evidence and for *Franks* Hearing ("Carney Reply Decl.") at Exh A.

[4] See Docket 36-1 at 1, 21.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

*Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Like a Terry stop, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop[.]" *Rodriguez*, 575 U.S. at 354. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Authority for the seizure thus ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Sharpe*, 470 U.S. at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").

The officers here made no effort whatsoever to address the supposed blocking traffic violation, diligent or otherwise. The continuation of the stop beyond the duration necessary to determine that Mr. Russell was in fact displaying a temporary license placard cannot be justified by an alleged violation that the officer clearly never had any intention of investigating.

**2. Once the Officers Confirmed the Presence of a Temporary License Plate, the Traffic Stop Was Required to End**

As reflected in Dkt. 36-3, a photo taken on the day of Mr. Russell's arrest plainly shows there was a temporary license placard displayed in the lower left of the rear window of the Volvo. The Government's Opposition shows precisely as much interest in this critical fact as did Officers French and Lentz, to wit: none whatsoever.

The Government makes no mention of the nationwide cases cited for the proposition that if a stop is predicated on the absence of a license plate, it must end when the presence of a



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

temporary plate is discovered.[5] As shown in Docket 35-3, there plainly was a temporary license plate displayed in Mr. Russell's car, a fact that was ignored both by the officers and the Government in its opposition. As discussed in the motion to suppress, the readily-apparent temporary license plate on Mr. Russell's car dissipated probable cause to stop him and all evidence recovered after that point should be suppressed.

### B. An Object is not in "Plain View" if Police Officers Must Perform an Unlawful Intrusion or Move Other Objects in Order to See It

The Government insists in its Opposition that the gun under the driver's seat was "in plain view." This abbreviated analysis overlooks critical facts. First, Officer Lentz opened the door of Mr. Russell's car, before later physically intruding into the vehicle to search it.[6] The Government's Opposition (Dkt. 45 at 5) makes much of the fact that Mr. Russell reopened the door to get his registration and proof of insurance, claiming that this was "after Officer French instructed him not to do so." This slanted recitation of the facts ignores the reality that Mr. Russell asked Officer Lentz if he should return to the vehicle get the documents and was instructed by Officer Lentz to do so.[7] As discussed in Docket 35 at 6-9, thereafter both officers physically prevented the driver's door from being closed by the positioning of their bodies and by placing their hands on the interior of the door. The Government's Opposition offers no discussion of these facts.

Most significantly in this context, the videos of the incident, and his own words, show that Officer Lentz was unable to see the gun until Officer French returned to the vehicle, placed his hand on the interior side of the driver's door, and pushed it farther open.[8] The Government

---

[5] See Dkt. 35 at 13-17.
[6] Dkt. 43-1 at 02:17-02:31; See also Dkt 35 at 17-18; *United States v. Ngumezi*, 980 F.3d 1285 (9th Cir. 2020).
[7] See Dkt. 36-6 at 02:36-04:41.
[8] See Dkt. 35 at 6-9 and exhibits cited therein.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

ignores this fact, insisting only that the gun was in "plain view" at the moment when Officer Lentz finally saw it. While technically true, this is equally true of every item that has ever been unlawfully seized during an unconstitutional search and avails the Government nothing. The Government's claim of "plain view" misses the mark because the video shows that the gun was only found because Officer French *moved the door* to facilitate the officers' ongoing search.

An officer may not simply move other objects in order to make the object of his search visible. *U.S. v. Washington*, 387 F.3d 1060, 1071 (9th Cir. 2004)(citing *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)). The *Washington* court explained that *Hicks*[9] stands for the proposition that "moving something ***even a few inches*** constitutes a search..." (Emphasis added). In its discussion of this issue, the *Ngumezi* court acknowledged that "[a]lthough the intrusion here may have been modest, the Supreme Court has never suggested that the magnitude of a physical intrusion is relevant to the Fourth Amendment analysis." *Ngumezi,* 980 F.3d at 1289.

It bears repeating in this context that the *Washington* court held that "plain view" does not authorize officers to act without lawful authority to keep the door to a protected area open, and then use that line of sight to claim "plain view" of contraband:

> After Washington's friend, Nolan, exited the room, the officers refused to let Nolan close the door[.] Officer Sceirine testified that, with the door open, the officers "had a fairly ample view of the room." Whether a hotel room door is opened in response to a threat or a command or is kept open against the wishes of the room's occupant, police officers obtain visual access to the room by using their power to require that the door *be* open. Both scenarios result in a search within the meaning of the Fourth Amendment, and both scenarios require consent, a warrant, or probable cause plus an exception to the warrant requirement. Here, the officers possessed none of these legal grounds for gaining visual access to Washington's room. Thus, the officers

---

[9] "[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry." *Hicks*, 480 U.S. at 325.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

> violated Washington's Fourth Amendment rights when they gained visual access to his room by refusing to let Nolan close its door.

*Washington*, 387 F.3d at 1070-1071.

The Government offers no discussion of the fact that both Officers unlawfully controlled the driver's door of Mr. Russell's car to facilitate their search. Similarly, the Government offers no rationale to distinguish *Ngumezi* and *Washington*. Because the gun was only visible and only found because of the officers' manipulation of the door to make it visible, the discovery of the gun is the product of an unlawful search and it must be suppressed.

**C. There was no Probable Cause for Marijuana DUI**

The Government acknowledges that following Officer Lentz's extended contact with Mr. Russell, Officer French asked Officer Lentz if he saw any evidence of impairment.[10] What the Government conspicuously omits is Officer Lentz's response. Officer Lentz, having spoken to Mr. Russell at close range for several minutes, responded that he had not seen evidence of impairment.[11] The Government offers no discussion of why Officer Lentz might have failed to notice the "watery bloodshot eyes" that Officer French later claimed to see. The Government also claims that "there is no valid evidence supporting Russell's claims that his eyes were not bloodshot, watery, or droopy."[12] This contention simply ignores the screenshot from Officer Lentz's body camera, clearly showing Mr. Russell's clear, wide-open eyes from close range[13], and likewise offers no explanation for the fact that Officer Lentz, undoubtedly having been trained to notice such evidence if it were present, failed to mention it when directly asked about

---

[10] Dkt. 45 at 5 ("When Officer French returned to the Volvo with Russell's license, he inquired of Officer Lentz about whether or not he could tell if Russell was impaired.")
[11] See Dkt. 35 at 7 and citations therein (I can't tell. I don't know.").
[12] Dkt. 45 at 22.
[13] See Dkt. 36-8.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

evidence of intoxication by his partner. Finally, the Government offers no explanation for the contradiction between the video evidence showing no object being flicked out of the car at any point and Officer French's contemporaneous failure to mention any such event on the one hand, and his later claim that he saw a lit object being thrown from the car on the other.[14]

The Government claims that the manner in which Mr. Russell prepared to pull over in response to the officers' activating their lights shows impairment.[15] Mr. Russell was driving within the speed limit and within his lane without any swerving. There was a steady flow of traffic in the lane to his right, but an open left turn lane leading to a side street and parking lot immediately available to Mr. Russell after the lights went on. As there was very limited space on the right shoulder of the road on the block where the lights were activated, Mr. Russell signaled left, slowed down, and stopped to wait for the left turn arrow to change to green, rather than turning left across a steady stream of oncoming traffic. It was at that moment that Officer Lentz activated the siren, which Mr. Russell reasonably interpreted as an escalation and responded by remaining still and putting his hands out the window. It was at that moment that the officers made the choice to exit their cruiser and approach Mr. Russell's car in the street. There is nothing in this sequence of events that suggests Mr. Russell was impaired.

Furthermore, even assuming that Officer French's assertion about Mr. Russell's eyes did not contradict the available evidence, such evidence has already been held by the Ninth Circuit not to constitute probable cause for a marijuana DUI arrest. *USA. v. Patzer*, 277 F.3d 1080, 1084 (9th Cir. 2002).

---

[14] See Dkt. 35 at 3-4, and exhibits cited therein.
[15] See Dkt. 43-1 at 01:02-01:52.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

The Government fails to even mention *Patzer*, let alone distinguish its near-identical facts and analysis. Just as in *Patzer*, there was not sufficient evidence to establish probable cause to arrest Mr. Russell for marijuana DUI, and all evidence recovered as the fruit of that arrest must be suppressed.

This remains true notwithstanding the Government's puzzling claim that "[d]uring a search incident to arrest, what appears to be a marijuana blunt was removed from Russell's pocket and placed on the hood of the patrol car."[16] Certainly, any object only recovered during a search incident to arrest cannot justify the arrest that preceded its discovery. Equally important, the object was not a blunt. The officers photographed all the evidence they seized from Mr. Russell and his vehicle, and did not include whatever object the Government is referring to.[17] Obviously, if the object had been a blunt that had been smoked, the officers would have documented it and included it in their reports. They did not, because it was a stray object of no evidentiary value.

**D. Mr. Russell is Entitled to a Hearing Pursuant to Franks v. Delaware**

In *United States v. Stanert*, 762 F.2d 775, 780–781 (9th Cir. 1985), *opinion amended,* 769 F.2d 1410, the Ninth Circuit laid out the standard for when a *Franks* hearing should be granted:

The Court in *Stanert* stated, in describing the showing necessary to obtain a hearing:

> Clear proof of deliberate or reckless omission is not required. *See United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). Such proof is reserved for the evidentiary hearing. *Id.* At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.

*Stanert*, 762 F.2d at 781.

---

[16] Dkt. 45 at 8-9.
[17] See Carney Reply Decl. Exh B.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

The defective warrant affidavit in this case was emailed to the magistrate at 02:54am on July 17, 2023, approximately 90 minutes after Mr. Russell's arrest.[18] It is difficult to conceive of evidence more suggestive of reckless or deliberate falsehood than the existence of multiple videos capturing the entire event and showing the affiant officer *personally witnessing* events that he significantly misrepresented an hour and a half later. Officer French included statements he had to have known were false, because he was a participant in the conversation he reported and a witness to the events that actually occurred, very shortly before he made the false statements and omissions. If these facts do not constitute a sufficient showing to justify a *Franks* hearing, it is hard to see how any facts ever could, short of an officer recording in a report that he *subjectively intended* to deceive the magistrate by deliberately including false information or omitting material information.

As to the materiality of the statements, the false allegations that Mr. Russell's "eyes were watery and bloodshot, and his eyelids were droopy" and that "he admitted smoking cannabis *one* hour before we stopped him" are effectively the only information in the warrant affidavit that cut in the direction of the existence of probable cause for DUI. Combined with the omission of the fact that the "blunt" found in the car had never been lit, implying that it had been freshly smoked, and likewise the omission of the fact of ordinary, competent driving for the twelve blocks the officers followed Mr. Russell, these statements are the core of the allegation of probable cause. The statements and omissions are patently material.

Mr. Russell has met his burden of showing that the false statements and misleading omissions in the warrant affidavit are material and that Officer French's failure of candor to the magistrate was reckless or intentional.

[18] Dkt. 36-7 at 1.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

**E. The Good Faith Doctrine is Inapplicable to These Facts**

Officers are entitled to the benefit of good faith reliance on a warrant *only* where the issuance of the warrant did not contravene "clearly established" law. *U.S. v. Brown*, 951 F.2d 999, 1007 (9th Cir. 1992).

To "determine that the law was clearly established, we need not look to a case with identical or even 'materially similar' facts." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)(Citing *Hope v. Pelzer*, 536 U.S. 730, 739-741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Flores v. Morgan Hill Unified Sch. Dist*., 324 F.3d 1130, 1136-1137 (9th Cir.2003). Rather, "the 'standard is one of fair warning: where the contours of the right have been defined with sufficient specificity that a state official had fair warning that [his] conduct deprived a victim of his rights[.]'" *Id.*

As discussed above, the Ninth Circuit has clearly established law on strikingly similar facts to those alleged in the warrant affidavit, in *USA. v. Patzer*. While no two cases are truly and literally identical, the facts of *Patzer* and the Ninth Circuit's holding that they did not support probable cause for a marijuana DUI are certainly similar enough to provide "fair warning" to Officers French and Lentz that any search warrant based on substantially identical factual allegations would be unlawful. Thus, they were not entitled to rely on the warrant in "good faith."

**I. CONCLUSION**

Officers French and Lentz unlawfully prolonged the stop of Mr. Russell's car, conducted unlawful searches of his car, arrested him in the absence of probable cause, and then procured a warrant by means of an affidavit riddled with false statements and omissions. All evidence should be suppressed.



CARNEY GILLESPIE PLLP
600 First Ave, Suite LL08
Seattle, WA 98104
206.445.0220 MAIN
206.238.9987 FAX
carneygillespie.com

DATED this 26th day of April, 2024.

Respectfully submitted:

s/Christopher Carney
Christopher Carney, WSBA #30325
Attorney for Defendant Keith Russell
600 1st Ave
Seattle WA 98104
Tel. 206-445-0212
Christopher.Carney@carneygillespie.com

This filing contains 3,148 words, in compliance with the local rules as enlarged by the Defendant's motion to file an overlength reply brief.



